IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| HASSOUN JABAR AL-GHANEM,<br><br>Petitioner,<br><br>vs.<br><br>ALBERTO R. GONZALES, Attorney General; MICHAEL CHERTOFF, Secretary of Department of Homeland Security; ALFONSO AGUILAR, Chief of Office of Citizenship; ROBERT S. MUELLER, III, Director of Federal Bureau of Investigation,<br><br>Respondents. | MEMORANDUM DECISION AND ORDER GRANTING PETITIONER'S MOTIONS FOR ENTRY OF FINAL JUDGMENT AND FOR ATTORNEYS' FEES<br><br><br>Case No. 2:06-CV-320 TS |

This matter is before the Court on Petitioner's Motion for Attorneys' Fees[1] and Petitioner's Motion for Entry of Final Judgment,[2] both of which address overlapping legal issues. A hearing was held thereon on February 6, 2007, and the Court heard argument of counsel and

---

[1] Docket No. 13.

[2] Docket No. 33.

took the matter under advisement. The Court, having considered the file, the written and oral arguments of the parties, the relevant case law, and being otherwise fully informed, will now grant both motions in favor of Petitioner. The Court will direct that final judgment be entered in this case, and will award modified attorneys' fees and costs under EAJA, as set forth more fully below.

I.   BACKGROUND

Petitioner entered the United States in 1997 as an Iraqi refugee, and filed his application for naturalization on April 8, 2002. On April 17, 2006,[3] Petitioner filed this case under 8 U.S.C. § 1447(b) after four years of delay yielded no decision. Then, just two months later, the government and Petitioner filed a joint motion to remand[4] this case to the Department of Homeland Security (hereinafter "DHS"), which was followed four days later by the Court's Order of Remand, directing that DHS "administer the oath of citizenship to Petitioner within 15 days."[5] Petitioner was given the oath of citizenship on June 29, 2006.

II.   DISCUSSION

Petitioner brought this action invoking the jurisdiction of the Court under 8 U.S.C. § 1447(b), which reads as follows:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the

---

[3] Docket No. 1.

[4] Docket No. 10.

[5] Docket No. 11.

> district in which the applicant resides for a hearing on the matter.
> Such court has jurisdiction over the matter and may either
> determine the matter or remand the matter, with appropriate
> instructions, to the Service to determine the matter.

The parties agree to the key relevant facts in this case: After his arrival in the United States in 1997 as a refugee from Iraq, Petitioner filed his application for naturalization with the Office of Citizenship and Immigration Services (hereinafter "CIS") on April 8, 2002. He was examined on March 26, 2003, and again on June 5, 2003. Thereafter, no further action was taken by the CIS. Petitioner commenced this action on April 17, 2006, and the Court issued its Order of Remand on June 26, 2006. The Court will address each of Petitioner's Motions, in turn.

   A.   MOTION FOR ENTRY OF FINAL JUDGMENT.

The thrust of the dispute on this issue centers on whether the subsequent agency action – the FBI's sudden completion of the background check, and CIS's approval of the application – rendered the Court's remand order merely a formalization of an existing decision, or whether the Court retained exclusive authority to grant such relief. The government concedes that exclusive jurisdiction was vested in this Court at the time the lawsuit was filed, but it argues that the Court's remand order still did not result in a change in the relationship between the parties which would qualify Petitioner as a "prevailing party."

The Court finds that Petitioner is entitled to an entry of final judgment in his favor, as this Court was vested with exclusive jurisdiction when this action was filed under § 1447(b). That statutorily defined authority included whether to "determine the matter or remand the matter." The Court ultimately did remand the matter, and the desired result was achieved three days later. The Court further finds that the remand constituted a final judgment, as it materially altered the

legal relationship of the parties through judicially sanctioned action.  Simply put, CIS could not have administered the oath of citizenship – the relief sought by Petitioner – absent the Court's remand order.  The Court's authority and prerogative to act as it did was not dependent upon whether or not CIS had taken its subsequent action.  Once jurisdiction vested in this Court, only the Court had the authority to "determine" or "remand" the case – CIS's action or inaction could not have trumped this Court's authority, and certainly did not pre-empt it.

The Court finds that its June 26, 2006 remand order did constitute a final judgment.  A formal judgment in favor of Petitioner, and against Respondent, shall enter in this case.

B.   MOTION FOR ATTORNEYS' FEES.

The determination of whether attorneys' fees are warranted in this case is governed by the Equal Access to Justice Act (hereinafter "EAJA"), 28 U.S.C. § 2412, which requires, in relevant part,[6] that Petitioner be a "prevailing party," and that the government's position was not "substantially justified."  If Petitioner meets this burden, the Court must determine the reasonableness of any fee award.

1.   Prevailing party.

As to the first prong – that Petitioner be a "prevailing party" – the Court has ruled today, in the context of the Motion for Entry of Final Judgment, that its Order of Remand constituted a final judgment in this matter, in favor of Petitioner.  Therefore, the Court incorporates its ruling

---

[6] Section 2412 contains other prerequisites, which the parties do not dispute that Petitioner has satisfied.

herein and further finds that Petitioner is the "prevailing party" in this case, for purposes of the EAJA determination.

The Court finds that, even absent the Court's ruling that the Order of Remand was a final judgment in this matter, the binding case law supports a finding that Petitioner is a "prevailing party" for purposes of EAJA. The Supreme Court has held that a petitioner may prevail for attorney fee purposes "even though he succeeded on only some of the claims for his relief."[7] Further, "[t]he court looks to the substance of the litigation to determine whether an applicant has substantially prevailed in its position, and not merely the technical disposition of the case or motion."[8]

The Petition in this case prays for the following relief: that the Court "enter a judgment that Petitioner is entitled to a hearing on his naturalization application, or in the alternative, remand the application to USCIS for immediate adjudication and enter a judgment that Petitioner is entitled to an adjudication within 15 days of said order."[9] As in *Kopunec*, the Court here finds that the Order of Remand "constitute[d] a substantial victory of [Petitioner's] position" and a "significant achievement of the benefit [Petitioner] sought in bringing the suit."[10] Moreover, the Order represents the precise and full relief Petitioner sought, both technically and substantively.

---

[7] *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

[8] *Kopunec v. Nelson*, 801 F.2d 1226, 1229 (10th Cir. 1986) (holding that an alien's avoidance of deportation was a substantial victory) (internal citation omitted).

[9] Docket No. 1, at 3-4.

[10] *Id.*

      2.      <u>Substantially justified</u>.

The Court must determine, then, whether the government's position was "substantially justified." The substantial justification test is one of reasonableness in both law and fact.[11] The primary issue under this analysis is when the 120-day statutory period began to run.

The government, citing two unpublished district court cases from Virginia and Ohio, argues that CIS was substantially justified in its actions and position, because the 120-day period did not begin to run until the entire examination process was completed, including the FBI name check – which did not occur until after the filing of this lawsuit. Petitioner cites the plain language of the statute, and the majority of cases, for the proposition that the 120-day period runs from the time of the examination by the CIS.

The Court finds that the plain language of the statute required CIS to make a determination "before the end of the 120-day period after the date on which the examination is conducted," and failure to do so vests jurisdiction in the district court to "either determine the matter or remand the matter."[12] In this case, CIS conducted its initial examination of Petitioner on March 26, 2003, and a re-examination on June 5, 2003. This matter was filed April 17, 2006, at which time no determination had yet been made by CIS.

---

[11] *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir. 1995), *cert. denied*, 516 U.S. 806 (1995); *see also Babel v. U.S. Dept. of Homeland Sec.*, 321 F.Supp.2d 963, 968 (N.D.Ill. 2004) ("The term 'substantially justified' simply means that the government must have a reasonable basis in both law and fact for its challenged actions.").

[12] 8 U.S.C. § 1447(b).

Although the Court acknowledges, as a practical matter, that CIS's actions were somewhat limited by the FBI's actions, the Court reflects upon the purpose of the EAJA, part of which is to provide relief to petitioners, and also to foster or induce greater efficiency and responsibility on the part of governmental agencies.

The Court finds that the government's position in this case was not substantially justified, either in fact or law.  The government was not factually justified in its position, as the Court cannot ignore the over three-year delay in the completion of the background check, followed by a near immediate response just one month following the filing of this action.  Neither was the government legally justified, relying on two unpublished district court cases while the significant majority of courts rejected those findings.  But moreover, the striking clarity of the plain language of the statute[13] renders the government's position legally unjustified.

      3.    <u>Reasonableness of fee award</u>.

EAJA expressly provides for a statutory rate of $125 per hour, which can be increased if an increased cost of living justifies a higher fee, or if "a special factor, such as limited availability of qualified attorneys for the proceedings involved justifies a higher fee."[14]  Petitioner argues that both circumstances are present in this case, warranting an hourly rate of $175 per hour.  The government concedes that the cost-of-living adjustment is justified, but disputes that there is a

---

[13] At oral argument, the government conceded that CIS now acknowledges that the 120-day period runs from the date of the examination and, effective in the Spring of 2006, has changed their policy to reflect this new position.

[14] 28 U.S.C. § 2412(d)(2)(A); *see generally, Harris v. Railroad Ret. Bd.*, 990 F.2d 519, 521 (10th Cir. 1993).

"special factor" present in this case to warrant a greater increase, and it further argues that some of Petitioner's claimed fees and costs are excessive and improper.

The Court finds that, while Mr. Foster is undoubtedly a competent and diligent attorney specializing in immigration law, this case – in essence, a suit to compel agency action – was not so complicated that it could not have been handled by a reasonably well-trained lawyer of ordinary care and diligence.  However, the Court does find that the cost-of-living adjustment is justified.  Relying upon the formula set forth in the briefs, the Court will award EAJA attorneys' fees calculated at a rate of $162.50 per hour.

As it relates to attorneys' fees, Petitioner has requested compensation for 55.45 billable attorney hours, two law clerk hours, and various costs (amounting to $422.33) related to this case.  The Court will limit the requested award as follows:

The Court will neither allow compensation for the 1.55 hours expended by counsel giving interviews to the press, nor will it allow the 1.5 hours spent in attending his client's naturalization ceremony.  The Court finds these hours to be non-compensable as they are not necessary and reasonable expenditures of counsel's time in this case.  The Court will, however, award the remaining 52.4 hours ($162.50/hour = $8,515), as well as the two law clerk hours ($75/hour = $150) billed.

The Court will not award costs assessed for postage ($29.28) or photocopies of documents for a newspaper reporter ($7.95).  The Court finds these two items to be non-litigation-related expenses and, thus, non-compensable under EAJA.  The Court will, however, award reimbursement of the remaining $385.10 in expenses to Petitioner.

Therefore, the total EAJA award to Petitioner is $9,050.10.[15]

III.     CONCLUSION

Based upon the above, it is hereby

ORDERED that Petitioner's Motion for Entry of Final Judgment (Docket No. 33) is GRANTED.  The Clerk of Court is directed to enter judgment in favor of Petitioner and against Respondents.  It is further

ORDERED that Petitioner's Motion for Attorneys' Fees (Docket No. 13) is GRANTED.  Petitioner's counsel is awarded attorneys' fees in the amount of $9,050.10, pursuant to 42 U.S.C. § 2412(d).  It is further

SO ORDERED.

DATED  February 7, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[15] The amount is calculated as $8,515 attorney fees, plus $150 law clerk hours, plus $385.10 costs/expenses.